Filed 6/15/22  In re E.E. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re E.E., a Person Coming Under the Juvenile Court Law. | B316263 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.M.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP05074A) |

APPEAL from findings and orders of the Superior Court of Los Angeles County.  Debra R. Archuleta, Judge.  Affirmed in part and remanded in part with directions.

Konrad S. Lee, under appointment by the Court of Appeal, for Appellant.

Dawyn Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly Emling, Deputy County Counsel, for Respondent.

_____

M.M. (Mother) appeals from the juvenile court's order terminating her parental rights.  Mother's sole basis for reversal is that the Los Angeles County Department of Children and Family Services (Department) failed to inquire of extended maternal family members who were readily available, as required by section 224.2, subdivision (b), of the Welfare and Institutions Code,[1] whether E.E. is an "Indian child" within the meaning of section 1903 of the federal Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA).

We find that the juvenile court erred in determining that ICWA did not apply without evidence that the Department questioned extended maternal family members with whom it had contact.  We conclude that the error was prejudicial because Mother was adopted as a baby and her adoptive mother (Maternal Grandmother) and her sister (Maternal Aunt) might have information about Mother's ancestry.  Maternal Grandmother and Maternal Aunt were interviewed by the Department, but the record does not reflect that they were asked about Mother's biological parents or Indian heritage.  Under these circumstances, further inquiry of readily available Maternal Grandmother and Maternal Aunt was likely to bear meaningfully upon whether E.E. is an Indian child.

Accordingly, we remand the matter with directions for the juvenile court to order the Department to comply with section 224.2.

### FACTUAL AND PROCEDURAL BACKGROUND

Because the alleged failure to comply with the inquiry requirements of ICWA and related California law is the sole basis

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

for Mother's appeal, we recite only those facts pertinent to this claim.

## I.  Parents' Prior Dependency Proceedings

Mother had a prior dependency court matter involving her child born in 2018.  That matter was closed after an independent adoption when the child was one month old.  The parties do not point us to any evidence of an ICWA inquiry or determination in that proceeding.

E.E.'s father (Father) has another child, S.E. (E.E.'s biological half sibling), born in 2007.  Father's parental rights were terminated with respect to S.E. in 2017.  In that matter, the juvenile court found that the ICWA did not apply to S.E based on S.E.'s mother's testimony on behalf of Father when Father was not present in court.

## II.  Active Dependency Proceedings

When E.E. was born in August 2019, a caller contacted the Department and informed it that Mother had tested positive for drugs during pregnancy.  Shortly after E.E.'s birth, Mother tested positive for amphetamines and opiates, and E.E. tested positive for opiates.

In August 2019, a social worker interviewed both of E.E.'s parents, and both denied any Indian ancestry.  That same month, the juvenile court authorized the detention of E.E. from her parents.  At the detention hearing, in response to the court's inquiries, both parents indicated they lacked Indian ancestry.  The minute order from that hearing also states that an ICWA-020 form was filed by both parents, and that form is in the record.

When interviewed by a social worker, Mother suggested Maternal Aunt as a potential placement for E.E.  Maternal Aunt

confirmed that she was Mother's sister,[2] but said that she was unable to care for E.E.

The social worker then contacted Maternal Grandmother regarding a placement for E.E. Maternal Grandmother told the social worker that she adopted Mother through a private adoption when Mother was 24 hours old. Grandmother reported that Mother's "birth mother and father signed [a] relinquishment paper. We went through an attorney."

In November 2021, the juvenile court found that there was no exception to adoption, terminated the parental rights of both parents, and ordered adoption as the permanent plan for E.E.

Mother timely appealed.

## DISCUSSION

### I.    Standard of Review

In cases where " 'the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied.' " (*In re D.F.* (2020) 55 Cal.App.5th 558, 565 (*D.F.*), quoting *In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.) In addition, " ' "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401 (*Josiah T.*), quoting *D.F.*, *supra*, 55 Cal.App.5th at pp. 565, 569.)

---

[2]    The parties do not bring to our attention any record evidence as to whether Maternal Aunt is Mother's biological sister or adoptive sister.

4

## II. Overview of ICWA and Initial Inquiry Law

ICWA contains unique provisions governing court proceedings concerning custody of American Indian children. (See generally 25 U.S.C. §§ 1911-1923.) "ICWA reflects a congressional determination to protect American Indian children and to promote the stability and security of Indian tribes and families." (*Josiah T.*, *supra*, 71 Cal.App.5th at p. 401.) In ICWA, Congress established procedural rules applicable in dependency cases to ensure that if an Indian child is involved, they are properly identified. (*Ibid.*; 25 C.F.R § 23.107(a).)

Federal regulations implementing ICWA provide that "[s]tate courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child[]" and that "[s]tate courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R § 23.107(a).)

Under state law, the juvenile court and the Department both additionally have a " 'continuing duty to inquire' " whether the child is an Indian child. (*D.F.*, *supra*, 55 Cal.App.5th at p. 566, citing § 224.2, subd. (a).) This duty has three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. (*Ibid.*)

In this case, the juvenile court determined that ICWA was inapplicable based on phase-one initial inquiry evidence only. Only the Department's initial duty of inquiry is at issue in this appeal.

## III. Due to Inadequacies in the Initial Inquiry, the Juvenile Court Erred in Finding ICWA Inapplicable

The juvenile court's finding that ICWA does not apply to E.E. implies that (a) neither the Department nor the court had a reason to know or believe that E.E. was an Indian child; and (b) the Department fulfilled its duty of inquiry.  (*Josiah T.*, *supra*, 71 Cal.App.5th at p. 401.)

"State law lays out the requirements for initial inquiry." (*Josiah T.*, *supra*, 71 Cal.App.5th at p. 402.)  This inquiry requires the Department to inquire of "extended family members," among others, "whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b).)

Mother argues that the Department never questioned readily available maternal relatives, specifically Maternal Grandmother and Maternal Aunt, about E.E.'s Indian ancestry, despite speaking with both.  The Department does not dispute this contention.  The record also does not reflect that the Department or the juvenile court ever questioned any extended family members about E.E.'s Indian status.

In the absence of *any* evidence that the Department complied with its section 224.2, subdivision (b), duty to inquire with extended family members, the juvenile court's implied finding that the Department fulfilled its duty of inquiry constitutes error.  (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [finding error where evidence showed the Department had contact with maternal aunt and maternal grandfather but failed to inquire of them regarding Indian ancestry].)  However, because the error is one of state law, we can reverse only if it was

6

prejudicial.  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 (*Benjamin M.*) [citing Cal. Const., art. VI, § 13].)

**IV.    The Juvenile Court's Error Was Prejudicial**

Appellate courts are divided on the showing of prejudice required for reversal where error is due to non-compliance with section 224.2's extended-family-inquiry requirement.  In other words, appellate courts disagree on whether, and to what extent, the failure to inquire of extended family can constitute harmless error.

In California, prejudicial error is ordinarily found only if, " 'after an examination of the entire cause, including the evidence,' " we are "of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

One line of cases concludes that a failure to inquire of *any* extended family member must result in reversal because the duty to inquire is mandatory and unconditional.  (See *In re A.R.* (2022) 77 Cal.App.5th 197, 206–207; *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 (*Y.W.*).)  In the view of these courts, no error is harmless.

The second line of cases concludes the error of failure to inquire is harmless unless a showing is made (such as by an offer of proof) that there is reason to believe Indian heritage exists.  (See *In re A.C.* (2021) 65 Cal.App.5th 1060, 1070; *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388.)  Under this approach, reversal is not warranted simply because a parent points out a theoretical possibility that an extended family member, if spoken to, might contradict the parent's representation to the court that the parent has no Indian heritage.

7

The third line of cases examines the record to determine whether it appears inquiry of the unasked extended family member(s) would yield "readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M., supra,* 70 Cal.App.5th at p. 744; *In re S.S.* (2022) 75 Cal.App.5th 575, 582–583.) Under this line of cases, the court does a case-by-case analysis examining the likelihood that the particular extended family member would possess new information about the child's heritage.

Considering the fractured nature of the caselaw, it is apparent our Supreme Court will have to ultimately weigh in on the standard for reversal in ICWA cases. We decline to make any broad pronouncement about cases involving facts not before us. The narrow question before us is whether the failure to inquire of known extended family members is harmless error (i.e., prejudicial) when a parent was adopted as a baby and has not provided the court with a reliable reason to believe the parent knows whether the parent's birth parents possessed Indian heritage. With these facts, reversal is warranted under *any* of the three lines of cases.

Under the first line of cases reversal is mandated because the Department spoke with both Maternal Grandmother and Maternal Sister about E.E., but never asked them about E.E.'s Indian ancestry. Under the second line of cases, Mother's representation that she has no Indian ancestry is, without more, simply a guess in light of her being adopted as an infant. No evidence was presented that Mother ever had an opportunity to learn of her heritage from her birth parents. No court has held that inquiry of extended family can be bypassed when a child's

parent is unaware of the identity or heritage of their biological parents.

Here, under the third line of cases, there was "readily obtainable information that was likely to bear meaningfully upon whether [E.E.] is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) Both Maternal Grandmother and Maternal Sister were available to discuss their knowledge, if any, about Mother's biological parents. The record does not reflect any representation by Mother that she had personal knowledge of her biological parents, or that she had more information about them than older, extended family. Her biological relatives, which the record suggests Maternal Grandmother may have knowledge of, may have information on whether Mother has Indian ancestry.

This case is therefore similar to *In re A.C.* (2022) 75 Cal.App.5th 1009 (*A.C.*), where both parents signed ICWA papers stating that A.C. was not an Indian child. Because the mother in *A.C.* spent time in foster care as a child, the court determined that the Department's lack of further inquiry was prejudicial because while the mother may not have known of her own Indian heritage, "[t]he same may not have been true of her biological relatives." (*Id.* at p. 1016.)

The facts here also resemble those in *Y.W.*, *supra*, 70 Cal.App.5th 542, where the court found prejudicial inquiry error where the mother was adopted and signed a form stating that she lacked Indian heritage, but the Department did not make meaningful efforts to "locate and interview" the biological parents despite having "a potentially viable lead to locate them." (*Id.* at pp. 547, 549, 552–553.)

9

In sum, because Mother was adopted at an age when she was incapable of discussing her heritage with her biological parents, and Maternal Grandmother and Maternal Aunt were readily available to the Department and may have had information on Mother's biological parents and Indian ancestry, the Department's error in not inquiring of them as to Mother's heritage was prejudicial error. Because Mother is adopted, her mere denial of Indian ancestry is not sufficient for us to hold that there is no prejudice from the Department's failure to inquire with E.E.'s readily available extended-family members about potential Indian ancestry. (*Cf. Y.W.*, *supra*, 70 Cal.App.5th at pp. 553–554; *A.C.*, *supra*, 75 Cal.App.5th at p. 1016.)

## DISPOSITION

The jurisdiction and disposition orders concerning E.E. are affirmed with instructions. The case is remanded to the juvenile court to comply with section 224.2. The juvenile court shall order that within 45 days of the remittitur, the Department report to the court its investigation of E.E.'s potential Indian ancestry by interviewing available extended family members. If the juvenile court determines that further inquiry under ICWA is warranted, it shall order the Department to comply with its obligations and make such disposition orders as may be compelled by statute.

HARUTUNIAN, J.[*]

We concur:

STRATTON, P. J.          WILEY, J.

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.